UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

CANTRELL MITCHELL, DANTE
DAVENPORT, ADRIAN HESTER,
DAVID MCCARLEY, ANTHONY
PITTMAN, ROBIN TIL, and
MALCOLM WILSON,                                    23-CV-445 (JLS) (MJR)

        Plaintiffs,

    v.

PEPSICO; BOTTLING GROUP, LLC;
BOTTLING GROUP LLC dba PEPSI
BEVERAGES COMPANY; PEPSICO
BEVERAGE SALES, LLC,
Individually, and as a subsidiary of
PEPSICO, INC.; SUPERVISOR RYAN
MELLER, Individually and in his
Official Capacity; SUPERVISOR ZACH
RUEGER, Individually and in his
Official Capacity; SUPERVISOR
AARON HELTZ, Individually and in
his Official Capacity; PAUL HUDSON,
Individually and in his Official
Capacity; and DOES 1 through 100,

        Defendants.

_____

## <u>DECISION AND ORDER</u>

Before the Court is Defendants' motion to enforce a settlement agreement.

*See* Dkt. 42.  For the reasons discussed below, the Court DENIES Defendants'

motion.

**BACKGROUND**

Plaintiffs filed this employment discrimination action on May 18, 2023. *See* Dkt. 1. Six of the seven Plaintiffs settled. *See* Dkt. 22, 24. Plaintiff David McCarley ("Plaintiff") remains.

The parties initially conducted a private mediation, but came to an impasse as to Plaintiff's case. Dkt. 22. This Court then referred the matter to Judge Roemer for a settlement conference. Dkt. 24–25. But before the conference, Defendants filed a letter stating that they had reached a settlement with Plaintiff. Dkt. 29. Judge Roemer cancelled the conference. Dkt. 30.

On June 27, 2024, Plaintiff filed a status report stating that the parties agreed over the monetary component, but disagreed as to Plaintiff's continued employment, causing the settlement agreement to break down. Dkt. 32. In response, Defendants filed a letter, arguing that Plaintiff unilaterally filed the status report and asking the Court to compel enforcement of the settlement agreement. Dkt. 33.

On August 15, 2024, Defendants moved to compel enforcement of the settlement agreement. *See* Dkt. 41–42. Plaintiff responded, and Defendants replied. Dkt. 44–45.

## DISCUSSION

### I.    LEGAL STANDARD

Settlement agreements are contracts interpreted according to general principles of contract law. *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007). A district court has the power to "enforce summarily, on a motion, a settlement agreement reached in a case that was pending before it." *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) (citations omitted). The party seeking to enforce the purported agreement "bears the burden of proving that the parties entered into a binding agreement." *Velazquez v. Yoh Servs., LLC*, No. 17 Civ. 00842 (CM), 2017 WL 4404470, at *2 (S.D.N.Y. Sept. 25, 2017) (citation omitted).

The Second Circuit has not ruled on "whether a district court should apply federal or state law to decide a motion to enforce a settlement." *Peters v. Huttel*, No. 15-CV-9274 (NSR), 2022 WL 1126751, at *2 (S.D.N.Y. Apr. 15, 2022) (citation omitted). The Second Circuit, however, has stated that there is "no material difference between the applicable state law or federal common law standard." *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997).

Under New York law, an enforceable settlement agreement requires "an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (citations omitted). The parties must be in agreement "on all essential terms," *Opals on Ice Lingerie v.*

3

*Bodylines Inc.*, 320 F.3d 362, 372 (2d Cir. 2003) (citation omitted), which consists of "all the issues perceived to require negotiation," *Brown v. Cara*, 420 F.3d 148, 153 (2d Cir. 2005) (citation omitted).

Parties are free to bind themselves orally, and "the fact that they contemplate later memorializing their agreement in an executed document will not prevent them from being bound by the oral agreement." *Ciaramella*, 131 F.3d at 322. If, however, the parties "intend not to be bound until the agreement is set forth in writing and signed, they will not be bound until then." *Id.* (citation omitted); *see also Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985) ("if either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract.").

Under *Winston*, the Circuit articulated four factors to determine whether parties intended to be bound by a settlement agreement in the absence of a document executed by both sides. *Winston*, 777 F.2d at 80–81; *see also Ciaramella*, 131 F.3d at 323. The court must consider:

> (1) [W]hether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Winston*, 777 F.2d at 80.

4

## II.   ANALYSIS

Moving defendants bear the burden to show that the parties entered into a binding agreement. *See Velazquez*, 2017 WL 4404470, at *2. Here, Defendants failed to meet that burden.

Defendants argue that Plaintiff agreed to settle this action and agreed to the following terms as part of that settlement: significant compensation and resignation. Dkt. 42-1, at 4.[1] It does not appear that the parties signed and executed a written agreement, but Defendants rely on a draft settlement agreement that Plaintiff's counsel prepared. *Id.* at 4–5. They argue that this draft includes the terms the parties agreed to, meaning Plaintiff agreed to settle. *Id.* In support, Defendants cite to *Garibaldi*—claiming that a preliminary agreement "entered into in anticipation of a later writing memorializing its terms, is no less binding than a written agreement, so long as the parties have not expressly reserved the right not to be bound in absence of a writing." *Id.* at 4; *Garibaldi v. Anixter, Inc.*, 533 F. Supp. 2d 308, 310 (W.D.N.Y. 2008). But this argument lacks merit, for the reasons below, because even if the parties had entered into a preliminary agreement or agreed to certain terms, they did not intend to bind themselves until they fully executed a signed settlement agreement.

---

[1] The page numbers cited refer to the CM/ECF pagination.

5

## A. <u>Express Reservation</u>

Under the first *Winston* factor, which is "frequently the most important,"
Defendants claim that the settlement agreement contains "boilerplate provisions,"
and not express reservations. Dkt. 45, at 9. Plaintiff cites to various provisions in
the proposed settlement agreement, arguing that the parties expressly reserve the
right not to be bound until the agreement is executed in writing. Dkt. 44-7, at
15–16; *see also Brown*, 420 F.3d at 154.

The proposed settlement agreement states: "[Plaintiff] understands that if he
fails to execute and return this Agreement, this Agreement will not become effective
and [Plaintiff] will not be entitled to the Settlement Payment." Dkt. 44-4, at 4.
Under these terms, Defendants did not have an obligation to pay Plaintiff until the
agreement was signed and became effective. *See, e.g., Ciaramella*, 131 F.3d at 324.

The agreement also states: "On or before the date on which [Plaintiff]
executes this Agreement, [Plaintiff's] attorneys shall sign or approve on behalf of
[Plaintiff] the Voluntary Stipulation of Dismissal of All Claims with Prejudice . . . ."
Dkt. 44-4, at 3. And it states that: "[Plaintiff] agrees that as part of this Agreement,
that within thirty (30) days of executing this Agreement he will resign his position
with the Company." *Id.* at 9. Accordingly, Plaintiff did not have an obligation to
dismiss the action or resign until the agreement was signed and became effective.

Under Defendant's interpretation, if Plaintiff had to resign and dismiss the
action, regardless of whether the settlement was signed, this essentially leaves

Plaintiff with no consideration for these promises because executing the agreement is what triggers Defendants' obligation to pay. *See, e.g., Ciaramella*, 131 F.3d at 324. This factor weighs in Plaintiff's favor.

## B. Partial Performance

Under the second *Winston* factor, Defendants argue that, when parties stop actively litigating, courts may construe this as partial performance. Dkt. 45, at 11. Plaintiff argues that this factor "is inapplicable as Defendants' impetuosity in filing the instant motion preempted any further good faith efforts to move in the direction of resolution." Dkt. 44-7, at 19.

Defendants cite to a case that involved an "extraordinary request" for the court to adjourn trial right before it started, in direct and immediate reliance on a settlement. *Chang v. CK Tours, Inc.*, 605 F. Supp. 3d 529, 539 (S.D.N.Y. 2022). Defendants then cite to the letter they filed with the Court, informing it of settlement and requesting adjournment *sine die* of the settlement conference. Dkt. 45, at 11. But this did not involve an "extraordinary request" like *Chang*.[2] The Court set the settlement conference to assist the parties with their settlement efforts, and a trial date has not been set.

Defendants also cite to *Galanis*. Dkt. 45, at 11. In *Galanis*, although the defendants filed a letter informing the court that the parties reached a

---

[2] Defendants also cite to *Junjiang Ji*, which also involved defendants who agreed to adjourn an ongoing trial due to a settlement. *Junjiang Ji v. Jling Inc.*, No. 15-CV-4194 (SIL), 2019 WL 1441130, at *12 (E.D.N.Y. Mar. 31, 2019).

settlement—as Defendants did here—they *also* requested, with the plaintiff's consent, that the court dismiss the case with prejudice. *Galanis v. Harmonie Club*, No. 1:13-CV-4344 (GHW), 2014 WL 4928962, at *9 (S.D.N.Y. Oct. 2, 2014). The plaintiff had agreed to dismiss the case with prejudice as part of the settlement agreement. Thus, the *Galanis* plaintiff was carrying out his obligation.

In contrast, in *Ciaramella*, the Second Circuit determined that there was no evidence of partial performance because the defendant had not started to perform its obligations under the settlement agreement. *See Ciaramella*, 131 F.3d at 325. Similarly, here, Defendants have not paid any money to Plaintiff—a basic element of consideration that would have been due to Plaintiff under the settlement agreement. And unlike *Galanis*, the parties never requested that the Court dismiss the action with prejudice, which is also a condition in the agreement at issue here. Dkt. 44-4, at 3. Thus, there is no evidence of partial performance. And even if this element is "at best neutral," as Defendants argue in the alternative, the next two factors weigh in Plaintiff's favor. Dkt. 45, at 11.

## C. Terms Agreed Upon

Under the third *Winston* factor, Defendants argue that the parties agreed to the "settlement amount, resignation, and everything other than the immaterial timing of payment." *Id.* at 12. Plaintiff claims that there was no "meeting of the minds," meaning all the material terms of the alleged contract had not been agreed upon. Dkt. 44-7, at 19.

Defendants attached two different versions of the settlement agreement in support of their motion. Dkt. 42-2, at 10–11, 13. Both versions contain sections titled "Resignation No Reemployment or Application," but the provisions vary. Additionally, Defendants claim that Plaintiff forwarded Defendants a "formal written settlement agreement," but, it appears that Plaintiff emailed a "draft" version on May 21, 2024. *Id.* at 3, 6. Defendants then revised the "Resignation No Reemployment or Application" section and sent a new version to Plaintiff on May 23, 2024, stating that it "tries to deal with the issue of [Plaintiff] leaving the employee of PepsiCo immediately upon execution of the agreement." *Id.*

Plaintiff also provided text messages between the parties' attorneys. On May 30, 2024, Plaintiff's counsel texted Defendants' counsel: "Don't forget that we need to get together. I have to discuss this release for [Plaintiff]. He has agreed to the monetary terms, but the terms of resignation are not yet resolved." Dkt. 44-5, at 2.

This factor weighs in Plaintiff's favor. The Second Circuit concluded "that the existence of even 'minor' or 'technical' points of disagreement in draft settlement documents were sufficient to forestall the conclusion that a final agreement on all terms had been reached." *Ciaramella*, 131 F.3d at 325 (citing *Winston*, 777 F.2d at 82–83). Here, Plaintiff's resignation was a substantive point of disagreement. From Plaintiff's perspective, the resignation terms were material because they were part of his consideration for dismissing the suit. *See, e.g., Ciaramella*, 131 F.3d at 325.

## D. <u>Type of Agreement Committed to Writing</u>

Under the fourth *Winston* factor, Defendants argue that the parties

sufficiently reduced the settlement terms to writing and did not dispute any

material terms when they reached a settlement. And they claim the agreement was

not complex. Dkt. 45, at 13. Plaintiff argues that settlements are generally

committed to writing or, at a minimum, made on the record in open court.

Dkt. 44-7, at 19; *see also* N.Y. C.P.L.R. 2104 (McKinney 2003).

This factor weighs in Plaintiff's favor. As the Second Circuit stated in

*Winston*, "[w]here, as here, the parties are adversaries and the purpose of the

agreement is to forestall litigation, prudence strongly suggests that their agreement

be written in order to make it readily enforceable, and to avoid still further

litigation." *Winston*, 777 F.2d at 83.

The agreement's complexity is also inconsistent with the notion that the

parties reasonably expected to bind themselves orally. *See Ciaramella*, 131 F.3d at

326. A complex agreement does not need to necessarily involve a complicated

business arrangement. *Id.*; *see also Winston*, 777 F.2d at 83. The agreement's

length and whether it contains provisions that apply in perpetuity may help

determine whether the agreement should be reduced to writing. *See Ciaramella*,

131 F.3d at 326.

Here, the draft agreement spans over nine pages of text. *See* Dkt. 44-4; *see*

*also Winston*, 777 F.2d at 83 (determining that a four-page settlement agreement

10

was one that should be reduced to writing).  It also contains obligations that will last for several years or in perpetuity.  *See* Dkt. 44-4; *see also Ciaramella*, 131 F.3d at 326.  For example, the draft agreement states that Plaintiff "waives any right to reemployment with the Company and agrees not to seek or apply for employment with the Company."  Dkt. 44-4, at 9.  The agreement also states that Plaintiff will "never" disclose the terms of the settlement agreement unless an exception applies. *Id.* at 6.  Thus, it "simply cannot be a surprise to anyone" that the agreement be in writing and formally executed.  *Ciaramella*, 131 F.3d at 326 (citations omitted).

Therefore, all four *Winston* factors weigh in Plaintiff's favor.  In light of this conclusion, the Court need not address Plaintiff's remaining arguments that Defendants failed to meet and confer, prior to filing the instant motion, and that the settlement agreement is fundamentally unfair.  Dkt. 44-7, at 9–10, 20.

## CONCLUSION

For all of these reasons, Defendants' motion to enforce the settlement agreement (Dkt. 42) is DENIED.


SO ORDERED.


Dated:        January 2, 2025
              Buffalo, New York


              _____
              JOHN L. SINATRA, JR.
              UNITED STATES DISTRICT JUDGE

11